UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

CASE NO.:  **CV 14-7060 SJO (MANx)**          DATE:  **August 13, 2015**

TITLE:     **Liu Aifang, et al. v. Velocity VII Limited Partnership, et al.**

========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                              Not Present
Courtroom Clerk                               Court Reporter


**COUNSEL PRESENT FOR PLAINTIFF(S):**    **COUNSEL PRESENT FOR DEFENDANT(S):**

Not Present                                   Not Present


========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING DEFENDANT'S MOTION TO DISMISS**
[Docket No. 145]

This matter is before the Court on Defendant Yin Nan "Michael" Wang's ("Defendant" or "Mr. Wang") Motion to Dismiss for Lack of Jurisdiction and for Failure to State Claim ("Motion"). Plaintiffs  Liu Aifang, Jin Bixia, Su Yan, Zhu Jingbo, Xu Jing, Gao Jinliang, Gou Xiaoye, Wang Hongmei, Xin Bin, Tan Yanting, Tao Qing, Lu Tsui-Hua, Chen Xiaoyan, Wu Chun-Fang, Lui Ssu-Han, Chen Jianxiu, Zhou Jun, Wu Shwu-Shing, Xian Hao, and Peng Hsien-Li (collectively, "Plaintiffs") filed their Opposition ("Opposition") on July 6, 2015.  Defendant filed his Reply on July 20, 2015.  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for August 3, 2015.  *See* Fed. R. Civ. P. 78(b).  For the following reasons, the Court **DENIES** the Motion.


I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege the following.  Plaintiffs are foreign citizens who each invested over $500,000 (collectively, the "investment funds") in the Velocity VIII Limited Partnership[1] ("Velocity VIII"), a business that was managed and controlled by Defendant, in connection with applications for EB-5 visas.[2]  (FAC ¶¶ 1-2.)  Each Plaintiff purchased a security interest in the form of a limited partnership

_____

  [1]  Velocity VIII is a California limited partnership, organized under the laws of California, with its principal place of business in California.  (FAC ¶¶ 1-2, 11.)  Velocity Regional Center LLC ("VRC") is the general partner of Velocity VIII.  (FAC ¶ 12.)  VRC is a California LLC with its principal place of business in California.  (FAC ¶ 12.)  Defendant Mr. Wang was the manager and CEO of VRC.  (FAC ¶ 16.)

  [2]  The EB-5 program, also known as the Immigrant Investor Program, was created to stimulate the U.S. economy through job creation and capital investment by foreign investors.  Under a pilot program first enacted in 1992, EB-5 visas were available to foreign investors who invested in Regional Centers designated by the United States Citizenship and Immigration Services based on proposals for promoting economic growth.  To obtain

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 14-7060 SJO (MANx)**          **DATE:   August 13, 2015**

interest in Velocity VIII.  (FAC ¶ 8.)  Plaintiffs were informed that: (1) Velocity VIII would loan all the investment funds to REO Property Group, LLC[3] ("REO Property"); (2) REO Property would use all of the loan proceeds to renovate, operate, and manage the Indio Fashion Mall on debt-free, real property owned by it (the "Property"); and (3) the Property would generate substantial profits from rental income to the benefit of Plaintiffs.  (FAC ¶ 2.)  Plaintiffs were told that their investment funds would be deposited into an attorney trust account in the name of Velocity VIII at California Bank and Trust ("CBT").  (FAC ¶5.)  The funds were to be held in trust, until Plaintiffs received approval of their immigration visas.  (FAC ¶ 5.)  After these visas were approved, the funds would be released from the trust account and loaned out to purchase and develop the Property.  (FAC ¶ 5.)

Partnership interests in Velocity VIII were offered pursuant to subscription agreements, disseminated from California and presented to Plaintiffs by EB-5 agents overseas.  (FAC ¶¶ 19, 39, 41, 45-47, 49, 51, 54, 56, 60, 67, 70, 81.)  Plaintiffs executed the agreements and wired their investments to the United States (FAC ¶¶ 75-76.)  Under the terms of the subscription agreements, VRC had to receive from Plaintiffs signed subscription agreements, accept the agreements, and receive Plaintiffs' investments before VRC would admit Plaintiffs as limited partners of Velocity VIII.  (FAC, Ex. 9 ("First Subscription Agreement"), ECF No. 91-9, Ex. 12 ("Second Subscription Agreement"), ECF No. 91-12, (collectively, "Subscription Agreements").)  The Subscription Agreements state: "Upon VRC's acceptance of this Subscription Agreement and receipt of your Capital Contribution and Syndication Fee if applicable, the undersigned shall be admitted as a Limited Partner of a Partnership." (Subscription Agreements§ I.B.)  Admission was at the "sole discretion of VRC."  (Subscription Agreements § I.B.)  VRC retained the rights to "reject any subscription in its sole and absolute discretion within 15 days of receipt" of the agreement from an investor.  (Subscription Agreements § I.A.1.)  After VRC received and accepted Plaintiffs subscription agreements and received payment, it would finalize and distribute to Plaintiffs the Velocity VIII partnership agreements.  (Subscription Agreements § I.B.)

The Subscription Agreements state that they "shall be interpreted and enforced in accordance with the federal laws of the United States of America and the State laws of California, without giving effect to principles and provisions relating to choice of law."  (First Subscription Agreement § V.H; Second Subscription Agreement § IV.H.)

---

the visa, individuals were required to invest at least $500,000 in a "Targeted Employment Area" (i.e., an area with high unemployment or a rural area), creating or preserving at least ten (10) jobs for U.S. workers excluding the investor and their immediate family.  (FAC ¶ 4.)

[3] REO Property Group, LLC and REO Group Properties, LLC were named as Defendants in the original complaint.  (*See* Complaint ¶¶ 11, 15, ECF No.1.)  REO Property Group was dismissed and is not included in the FAC.  (Notice of Dismissal, ECF No. 56; *see generally* FAC ¶¶ 10-33.)  For purposes of considering the Motion, both are alleged to be California limited liability companies with their principal places of business in California.  (Complaint ¶ 11; FAC ¶ 15.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 14-7060 SJO (MANx)**          **DATE:  August 13, 2015**

The investment funds were to be made payable to VRC and the subscription agreements delivered to its offices.  (Subscription Agreements § I.A.2.)  Plaintiffs were instructed to wire their investment funds to California which then would be placed in an attorney trust account maintained by CBT.  (FAC ¶¶ 127, 139-40.)  Upon receiving the funds, branches of CBT issued letters acknowledging receipt.  (*See* FAC, Ex. 24.)

In addition to the Subscription Agreements, Plaintiffs received Private Placement Memoranda ("PPMs").  (FAC, Ex. 2 ("First PPM"), ECF No. 91-2; Ex.11 ("Second PPM"), ECF No. 91-11.)  They note that "Investors who wish to subscribe for the [limited partnership] Units may do so by executing the Subscription Agreement and all accompanying documents attached hereto as Exhibit B and delivering to the Partnership the completed materials and payment for the Units, along with any applicable Syndication Fee."[4]  (*See, e.g.,* Second PPM 18.)  The PPMs also provide that the "Investor shall be admitted as a Limited Partner on the same day that the subscription proceeds are deposited into the Segregated Account."  (*See, e.g.*, Second PPM 17.)  They further state:

> In order for an Investor to be accepted as a Limited Partner, the Limited Partnership must receive payment in full for the Units which are being purchased within fifteen business days of the execution of the Subscription Agreement.  Once the subscription proceeds are received in the Segregated Account, the Investor shall be deemed a Limited Partner.  Prior to depositing of the subscription proceeds in the Segregated Account, The Partnership may reject the subscription in its sole discretion for whatever reason.

(Second PPM 18.)

Plaintiffs filed their FAC in April 2015 alleging two claims under federal securities laws.  (FAC ¶¶ 180-86.)  Specifically, Plaintiffs allege violations of the Securities Act of 1933, 15 U.S.C. section 771, and violation of section 10(b) of the Securities Exchange Act of 1934 and rule 10b-5, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  (*See* FAC 180-86.)  The remaining claims are for violations of state law.  Defendant moves to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) on the basis that the investments at issue are not subject to the securities laws referenced in the FAC.  (*See generally* Motion.)  Defendant further argues that because the securities laws do not apply, the Court should decline to exercise supplemental jurisdiction over the remaining state claims.  (Mot. 2.)

II.     DISCUSSION

---

[4]  The PPMs describe a "Unit" as a portion of the limited partnership.  (*See, e.g.,* Second PPM 2 ("Through the offering of units of limited partnership interests (individually a 'Unit' and collectively 'Units'), the Partnership seeks to raise capital to invest within the geographical area that comprises the General Partner's federally designated regional center which, in general, consists of areas in the State of California in accordance with the Immigrant Investor Pilot Program.")

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** __CV 14-7060 SJO (MANx)__          **DATE:** __August 13, 2015__

Dismissal under Rule 12(b)(6) can be based on lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. *See NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Defendant relies primarily on *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), for the proposition that the securities laws do not apply to the securities at issue here. To challenge whether particular securities or conduct is regulated by domestic securities law, the Supreme Court held that the motion is properly brought under Rule 12(b)(6). *Id.* at 254 ("[T]o ask what conduct [section] 10(b) reaches is to ask what conduct [section] 10(b) prohibits, which is a merits question.")

In *Morrison*, defendant National Australia Bank Ltd. ("National") was sued for securities fraud by a group of plaintiffs consisting of Australian nationals. *Id.* at 251. At the time, National was the largest bank in Australia and its common stock was traded on the Australian Stock Exchange. *Id.* National purchased HomeSide Lending, Inc. ("HomeSide"), a mortgage servicing company headquartered in Florida. *Id.* HomeSide recorded the value of its assets which in turn appeared in National's financial statements. *Id.* In 2001, National disclosed that the value of HomeSide's assets were significantly less than previously recorded. On July 5 and September 3, 2001, National wrote down the value of HomeSide's assets by $450 million and $1.75 billion, respectively, thereby damaging plaintiffs who had purchased shares prior to the write downs. *Id.* at 252. According to the complaint, HomeSide and its executive officers manipulated Homeside's financial models to make HomeSide's assets to appear more valuable than they really were. *Id.*

Plaintiffs sued National, HomeSide, and their executives in the United States District Court for the Southern District of New York for violations of the Securities and Exchange Act. *Id.* The district court dismissed the complaint and the Second Circuit affirmed, finding the "heart of the alleged fraud" occurred outside of the United States. *Id.* at 253.

The Supreme Court granted *certiorari* and held that "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." *Id.* at 273. "[T]he focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States." *Id.* at 267.

Here, because it is undisputed that the securities were not listed on a domestic stock exchange, Defendant argues that *Morrison* precludes Plaintiffs' claims because the purchases occurred outside of the United States. In support, Defendant claims that Plaintiffs were largely solicited by

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 14-7060 SJO (MANx)</u>          **DATE:** <u>August 13, 2015</u>

EB-5 visa agents overseas and Plaintiffs' purchase obligation was complete once they signed the agreements. (Mot. 1, 5-6.)  The Court is not persuaded by this assertion and finds this case distinguishable from *Morrison*.  Defendant's argument that the sales must have been completed outside of the United States is not supported by the allegations in the FAC nor by supporting documentation.  As stated in the Subscription Agreements and the PPMs, the general partner had the sole discretion to reject any agreement after it was executed by the Plaintiffs.  The Subscription Agreements also indicate that in order to be admitted as a limited partner, the investment funds had to be received into the attorney trust account in California.  These allegations suggest that the purchases were completed when the general partner accepted the agreements and the investment funds had been received.  These allegations contravene Defendant's assertion that the transactions were completed overseas.

Furthermore, while *Morrison* is similar in that the action was brought by foreign investors seeking to enforce American securities laws, it also involved a foreign securities issuer and securities traded on a foreign exchange. *Morrison* at 250.  Indeed, "all aspects of the purchases complained of . . . occurred outside of the United States." *Id.* at 273.  In contrast, here, the general partner was a domestic issuer who offered security interests in a California partnership whose purpose was to manage a California property.  Solicitation materials were sent from and agreements and investment funds were sent to California.  Myriad components of the investment agreements are causally linked to California including:  VRC, the general partner of Velocity VIII; Velocity VIII, the limited partnership in which interest was offered to Plaintiffs; REO Property, the entity who was set to manage the Property; the attorney trust account, where the investment funds were held until there was approval for the visas; and the Property itself.  These allegations satisfy the standard put forward in *Morrison.*

For the foregoing reasons Defendant's Motion is **DENIED**.  Defendant has **10 days** to answer the FAC.

IT IS SO ORDERED.